1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SHANNON RENEE HAGAN,                     No.  2:14-cv-2464-EFB

12                   Plaintiff,

13           v.                                ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security
15
16                   Defendant.

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her applications for a period of disability and Disability Insurance

20   Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

21   Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the

22   reasons discussed below, plaintiff's motion is granted, the Commissioner's motion is denied, and

23   the matter is remanded for further proceedings.

24   I.     BACKGROUND

25          Plaintiff filed applications for a period of disability, DIB and SSI, alleging that she had

26   been disabled since July 27, 1989.  Administrative Record ("AR") 242-255.  Plaintiff's

27   applications were denied initially and upon reconsideration.  *Id*. at 159-162, 164-168.  On

28   November 8, 2012, a hearing was held before administrative law judge ("ALJ") Peter F. Belli.  *Id*.

at 33-98.  Plaintiff was represented by counsel at the hearing, at which she, a third-party witness, and a vocational expert ("VE") testified.  *Id.*

On January 18, 2013, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Act.[1]  *Id.* at 14-27.  The ALJ made the following specific findings:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2.  The claimant has not engaged in substantial gainful activity since April 1, 2009 (20 CFR 404.1571 *et seq.*, 416.971 *et seq.*).

* * *

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2

3. The claimant has the following severe combination of impairments: borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations" the claimant is able to receive, understand, and remember simple instructions.  She can make simple work place judgments.  She can make adjustments to normal changes in the workplace.  The claimant can interact appropriately with supervisors, and have frequent interaction with co-workers and the public.

   * * *

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965)

   * * *

7. The claimant was born on July 27, 1989, and is now 23 years old, which is defined as a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to able to communicate in English (20 CFR 404.1568 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

   * * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 16-26.

Plaintiff's request for Appeals Council review was denied on August 21, 2014, leaving the ALJ's decision as the final decision of the Commissioner.  *Id.* at 1-5.

/////

3

1  II.    LEGAL STANDARDS

2      The Commissioner's decision that a claimant is not disabled will be upheld if the findings

3  of fact are supported by substantial evidence in the record and the proper legal standards were

4  applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

5  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

6  180 F.3d 1094, 1097 (9th Cir. 1999).

7      The findings of the Commissioner as to any fact, if supported by substantial evidence, are

8  conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

9  more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

10 Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a

11 conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.

12 N.L.R.B.*, 305 U.S. 197, 229 (1938)).

13     "The ALJ is responsible for determining credibility, resolving conflicts in medical

14 testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

15 2001) (citations omitted). "Where the evidence is susceptible to more than one rational

16 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

17 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

18 III.   ANALYSIS

19     Plaintiff contends that the ALJ erred in finding that her impairments did not satisfy Listing

20 12.05. ECF No. 14 at 12-20. At step three of the sequential evaluation process, the ALJ

21 determines whether a claimant's impairment or combination of impairments meet or equals one

22 of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Where a claimant's

23 impairment or impairments meets or equals a listed impairment in Appendix 1, the claimant is per

24 se disabled. 20 C.F.R. § 416.920(d). "Once a per se disability is established, the ALJ has no

25 discretion; he must award benefits." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990).

26     Listing 12.05—intellectual disability—"refers to significantly subaverage general

27 intellectual functioning with deficits in adaptive functioning initially manifested during the

28 developmental period; i.e., the evidence demonstrates or supports onset of the impairment before

4

age 22." The listing can be met by demonstrating "[a] valid verbal, performance, or full scale IQ test of 59 or less; [or]… [a] valid, verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05(B)-(C). Where the plaintiff's verbal, performance, and full scale IQs differ, "the lowest of these [is used] in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c). Thus, plaintiff meets the listing if (1) she has a valid IQ score of 59 or less and (2) the evidence demonstrates or supports onset of the impairment before age 22; or, if (1) she has a valid IQ score between 60 and 70, (2) the evidence demonstrates or supports onset of the impairment before age 22, and (3) she has a physical or other mental impairment imposing an additional and significant work-related limitation of function.

A. Listing 12.05(B)

At the third step of the sequential evaluation process, the ALJ considered whether plaintiff's impairment's satisfied Listing 12.05. He first considered 12.05(B), and concluded that plaintiff did not have a valid IQ score of 59 or less. AR 17. The ALJ acknowledged that the record contained an IQ score of 55. However, the ALJ found that the score was not valid because it "was obtained using abbreviated testing and the examiner noted that this score is for research purposes only and are not to be used for clinical evaluation." *Id*. The ALJ also found the score invalid because the testing was not conducted by a licensed qualified specialist. *Id*.

The ALJ's 12.05(B) discussion referenced an IQ score from March 2010, when plaintiff participated in a Psychopathology in Chromosome 22q11.2 Deletion Syndrome Study at the University of U.C. Davis M.I.N.D. Institute. AR 750. During the study, plaintiff completed a Wechsler Abbreviated Scale of Intelligence ("WASI"), which resulted in a full scale IQ score of 69, verbal score of 90, and a performance score of 55. *Id*. The report detailing the test results was signed by a certified clinical research professional and noted that the "results are not to be used for clinical interpretation or educational placement." *Id*.

Plaintiff does not dispute the ALJ's finding that this IQ score was invalid. ECF No. 14 at 15 ("The ALJ may be justified in rejecting this report based on the fact that the evaluator is not a

1  psychologist and the evaluator reported that the results are not to be used for clinical

2  interpretation.  However, use of the abbreviated Wechsler testing is not a valid basis to reject an

3  IQ score.").  Plaintiff argues, however, that the she satisfies listing 12.05(B) based on testing

4  conducted in September 2007, when she was 18 years old.  *Id*. at

5      Plaintiff underwent a psychological assessment on September 6, 2007, which was

6  performed by James McCray, Psy.D.  AR 764-774.  As part of the assessment Dr. McCray

7  performed a WASI, which resulted in a full scale IQ score of 69, verbal score of 83, and a

8  performance score of 57.  *Id*. at 770.  Dr. McCray's report explained that plaintiff was

9  administered the Wechsler Adult Intelligence Scale-Third Edition ("WAIS-III ") approximately 9

10  months earlier, and that "[i]deally, a person is not administered the same intelligence test within

11  12 to 18 months because a person may recall the questions/answers or the recent practice may

12  artificially inflate their score."  To avoid this issue, he specifically administered the WASI,

13  "which includes the same type of Wechsler subtests but has different questions/challenges."  *Id*.

14      The WASI test completed by Dr. McCray satisfies Listing 12.05(B).  Plaintiff's

15  performance score was 57, and the test was administered when plaintiff was 18 years old,

16  demonstrating an onset of impaired intellectual functioning prior to the age of 22.  Yet the ALJ

17  failed to address it.  His discussion of 12.05(B) addresses only plaintiff's IQ score of 55 from

18  March 2010, which he rejected as invalid.  The WASI performance score from the test of

19  September 6, 2007 is simply ignored.  An ALJ must, in some way, explain why an IQ score is

20  disregarded.  *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057 (C.D. Cal.2010) (citing *Thresher v.*

21  *Astrue*, 283 F. App'x. 473, 475 & n. 5).  As the ALJ failed to discuss plaintiff September 2007

22  performance IQ score, the court cannot sustain his step-three finding.

23      Without acknowledging the ALJ's failure to address this score, the Commissioner argues

24  that the results from the September 2007 WASI test are not valid.  ECF No. 19 at 12-13.  First,

25  the Commissioner argues that the score was invalid because Dr. McCray administered the WASI

26  prematurely.  *Id*.  The Commissioner observes that plaintiff completed a WAIS-III in January

27  2007, and scored performance IQ of 70—significantly higher than the results obtained in

28  September 2007—and attributes the decline in plaintiff's performance score to the proximity

between the tests.  *Id*.; *see* AR 768.  Dr. McCray, however, accounted for the relatively short time between the two tests.  After noting that plaintiff completed the WAIS-III in January, the report states: "Ideally, a person is not administered the same intelligence test within 12 to 18 months because a person may recall the questions/answers or the recent practice may artificially inflate their score.  To avoid this, the examiner administered the [WASI], which includes the same type of Wechsler subtest but has different questions/challenges."  AR 770.  Thus, Dr. McCray administered a different intelligence specifically to limit the prior test's influence on his assessment of plaintiff.[2]  Accordingly, there is no basis for the Commissioner's conclusion that testing administered by Dr. McCray was premature.

The Commissioner also argues that the September 2007 IQ score is invalid based on a January 2011 neuropsychological evaluation conducted by Catherine Broomand, Ph.D.  ECF No. 19 at 12-13.  Plaintiff was referred to Dr. Broomand in January 2011 because of a reported 15 point drop in her intellectual functioning.  AR 755.  Dr. Broomand observed that plaintiff's performance IQ scores were 68 and 70 in 2001 and 2007, respectively, but that plaintiff scored a 55 in 2010.  *Id*.  During her evaluation, Dr. Broomand administered the WAIS-IV and obtained a full scale IQ score of 70.  *Id*. at 757.  She concluded that plaintiff's performance was consistent with her performance in 2001 and 2007, and that "[t]here is no evidence for a decline as suggested by the testing in 2010."  *Id*. at 757.  She further stated that plaintiff's medication, which had been discontinued prior to January 2011, "was suspected to have contributed to the decline."  *Id*. at 755.

The Commissioner contends that this "report strongly implies Plaintiff maintained a performance IQ score between 68-70.  ECF No. 19 at 13.  Dr. Broomand's report, however, fails to identify plaintiff's performance score.  Instead, the report only provided plaintiff's full scale score of 70, which was only one point higher than the full scale score assessed by Dr. McCray.

/////

---

[2]  In any event, the risk as to validity is that the score might be artificially inflated, not lowered.  Even if artificially high due to the proximity in time to an earlier test, the score of 57 plainly satisfies Listing 12.05(B).

1    Furthermore, Dr. Broomand stated that "plaintiff continues to perform in the extremely low range

2    overall and has a relative strength in verbal abilities over nonverbal abilities." *Id.* at 762.  This

3    suggests that plaintiff's verbal IQ score was higher than her performance score, which is

4    consistent with her prior test results, including the results from Dr. McCray.  More significantly,

5    Dr. Broomand's report makes no mention of the IQ scores from Dr. McCray's assessment, and

6    does not provide any opinion as to the validity of the results from his testing.[3]  Accordingly, Dr.

7    Broomand's assessment does not justify ignoring the IQ scores assessed by Dr. McCray.

8         Further, the court reviews the decision and analysis of the ALJ in determining whether the

9    ALJ applied the appropriate standard at step three and the requirements of Listing 12.05(B).  The

10   post-hoc rationalizations advanced by the Commissioner cannot justify the ALJ's tacit rejection

11   of plaintiff's September 2007 performance IQ score.  "An ALJ must evaluate the relevant

12   evidence before concluding that a claimant's impairments do not meet or equal a listed

13   impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  "A reviewing court can evaluate

14   an agency's decision only on the grounds articulated by the agency." *Ceguerra v. Sec'y of Health*

15   *& Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991).  Here, the ALJ's decision makes no

16   reference of plaintiff's September 2007 IQ score, let alone explains a justification for rejecting it.

17   The decision therefore fails to articulate any basis for questioning the test score's validity.

18   Accordingly, the ALJ failed to properly consider whether plaintiff satisfies the requirements for

19   Listing 12.05(B).  *See Thresher*, 283 F. App'x. at 474 (remanding the case where the ALJ failed

20   to address, among other things, the validity of the plaintiff's IQ score).

21        B.    Listing 12.05(C)

22        Plaintiff also argues that the evidence of record establishes that she meets the

23   requirements for 12.05(C).  The Commissioner concedes that plaintiff consistently scored full

24   scale IQ scores 60 through 70.  ECF No. 19 at 14.  The Commissioner also does not dispute that

25   the onset of plaintiff's mental impairments was prior to obtaining age 22.  *Id.*  Accordingly, the

26

27        [3]  The 2007 scores—which included verbal score of 89, performance score of 70, and full
     scale score of 78—discussed by Dr. Broomand were from the evaluation conducted in January
28   2007.  *See* AR 757, 768.

court need only decide whether plaintiff has a physical or other mental impairment that imposes an additional and significant work-related limitations. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §12.05(C).

"[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). Thus, a plaintiff satisfies the third requirement of 12.05(C) if she has an additional impairment that is "severe." *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00(A) (noting that for Listing 12.05(C), "we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)"). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)).

Plaintiff argues that her scoliosis, a condition not considered by the ALJ, imposes an additional work-related impairment. ECF No. 14 at 19. The record contains two opinions from non-examining physicians. Dr. C. Eskander assessed plaintiff's functional limitations and concluded that she was limited to light work. AR 116-120. Dr. Eskander's assessment noted "evidence of scoliosis on x-ray." *Id*. Plaintiff's medical records were also reviewed by Dr. C.R. Dann, who opined that plaintiff was restricted to light work due to her scoliosis. AR 148-152. Specifically, he stated that X-rays "noted mild scoliosis curves . . . that would reasonably support [a] restriction to light exertion" with occasional postural restrictions. *Id*. at 148.

The ALJ rejected Dr. Dann's opinion that plaintiff's scoliosis limited her to light work. The ALJ provided the following explanation:

> [A]s delineated above, the record does not contain any objective findings that support this assessment. In addition, this non-examining opinion appears to be inconsistent with the claimant's demonstrated ability to work and attend school. Moreover, evidence submitted subsequent to this opinion does not contain any

9

findings that support these additional restrictions.  Therefore, the Administrative Law Judge gives this non-examining opinion little weight."

AR 25.

Contrary to the ALJ's finding, Dr. Dann's assessment is supported by objective findings. The record contains X-ray evidence demonstrating that plaintiff has thoracic and lumbar scoliosis. *Id*. at 689.  Dr. Dann specifically referenced the x-ray findings to support the opinion that plaintiff was limited to light work.  *Id*.  The ALJ's decision, however, makes no reference to plaintiff's x-rays, nor does it mention plaintiff's diagnosis of scoliosis.

The only other justification for disregarding Dr. Dann's assessment was that "it appears to be inconsistent with the claimant's demonstrated ability to work and attend school."[4]  *Id*. at 25. There is nothing inherently inconsistent about Dr. Dann's opinion and plaintiff's ability to attend college and work at a day care center.  Attending classes is not a rigorous activity requiring more than the ability to perform light work.  Further, plaintiff's part-time work at a day care center only required minimal exertion.  Plaintiff testified that her duties at the day care center primarily involved working with babies.  AR 42.  Plaintiff would play with babies, get them ready for lunch, sit them in their chairs and put bibs on them.  *Id*. at 42.  Plaintiff also prepared the children's bottles, fed them, and put them down for naps.  *Id*.  There is nothing in this job description that is inconsistent with Dr. Dann's opinion that plaintiff was limited to light work due to her scoliosis.

Furthermore, the ALJ completely failed to address the opinion of Dr. Eskander, who similarly concluded that plaintiff's scoliosis justified a limitation to light work.  Thus, the ALJ

---

[4] The ALJ relies on plaintiff's enrollment at a community college and ability to work part time at a day care center in rejecting Dr. Dann's opinion.  The ALJ's entire decision rests heavily on plaintiff's performance of these activities.  However, conspicuously missing from the decision is a detailed description of how plaintiff performs these activities.  Throughout the decision, the ALJ appears to rely on his own personal belief of how these activities are performed, without consideration of the specifics facts of plaintiff's case.  For instance, the ALJ cites to plaintiff's enrollment at a community college to demonstrate that she is not as mentally limited as alleged, but omits any acknowledgment that, rather than attending classes at an academic level leading to a bachelor's degree, plaintiff testimony shows that at the time of the hearing her college courses consisted of yoga and English labs for vocabulary and spelling.

1   erred by failing to consider all the relevant evidence of record in determining that plaintiff did not

2   satisfy Listing 12.05(C).  *Lewis v. Apfel*, 236 F.3d at 512 ("An ALJ must evaluate the relevant

3   evidence before concluding that a claimant's impairments do not meet or equal a listed

4   impairment.").

5          C.  Remand for Further Proceedings

6          "A district court may reverse the decision of the Commissioner of Social Security, with or

7   without remanding the cause for a rehearing, but the proper course, except in rare circumstances,

8   is to remand to the agency for additional investigation or explanation."  *Dominguez v. Colvin*, 808

9   F.3d 406, 407 (9th Cir. 2015) (internal quotes and citations omitted).  "Unless the district court

10  concludes that further administrative proceedings would serve no useful purpose, it may not

11  remand with a direction to provide benefits."  *Id.*

12         Although plaintiff adamantly contends that there are no outstanding issues and that

13  remand for payment of benefits is appropriate, *see* ECF No. 14 at 20-21, the court disagrees.

14  Here, the September 2007 IQ score relied upon by plaintiff to establish disability under Listing

15  12.05(B) was not addressed by the ALJ.  Furthermore, that performance score was significantly

16  lower than other IQ scores in the record, calling into question the validity of the score.  Thus,

17  remand for further consideration of the validity of this score is warranted.  *See Thresher*, 283 F.

18  App'x. at 474 (remanding the case where the ALJ failed to address, among other things, the

19  validity of the plaintiff's IQ score).

20         Similarly, the ALJ's decision indicates a failure to consider the impact of plaintiff's

21  scoliosis on plaintiff's ability to work.  Although two non-examining physicians opined that this

22  impairment justified limiting plaintiff to light work, the court cannot ignore the fact that plaintiff

23  did not testify to experiencing limitations due to her scoliosis.  Thus, it is not entirely clear from

24  the record what impact, if any, plaintiff's scoliosis has on plaintiff's ability to work.  Accordingly,

25  remand for further proceedings is appropriate.

26  /////

27  /////

28  /////

11

1    IV.    <u>CONCLUSION</u>

2          The ALJ's decision is not supported by substantial evidence.  Accordingly, it is hereby

3    ORDERED that:

4          1.  Plaintiff's motion for summary judgment is granted;

5          2.  The Commissioner's cross-motion for summary judgment is denied;

6          3.  The matter is remanded for further consideration consistent with this order; and

7          4.  The Clerk is directed to enter judgment in plaintiff's favor.

8    DATED:  March 23, 2016.

9

10                              EDMUND F. BRENNAN
                                UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28